**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAVID HO-ROMERO,

Defendant - Appellant.

No. 23-3848

D.C. No.
3:21-cr-00856-DMS-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted August 18, 2025
Pasadena, California

Filed February 18, 2026

Before: Marsha S. Berzon, Mark J. Bennett, and Jennifer
Sung, Circuit Judges.

Opinion by Judge Berzon;
Dissent by Judge Bennett

## SUMMARY[*]

### Criminal Law

The panel vacated a sentence and remanded for resentencing in a case in which David Ho-Romero pleaded guilty to methamphetamine importation.

The district court applied an obstruction of justice enhancement under U.S.S.G. § 3C1.1 on the basis of alleged threats Ho-Romero made to a witness who testified in grand jury proceedings regarding his drug charges. The enhancement requires that a "defendant *willfully* obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." (Emphasis added). The district judge held that this requirement could be satisfied in some circumstances without any intent to obstruct justice and found only that Ho-Romero's threats could have been understood by the witness as attempts to obstruct justice. The district court made no finding as to whether Ho-Romero *willfully* obstructed or attempted to obstruct justice.

*United States v. Lofton*, 905 F.2d 1315 (9th Cir. 1990), held that a finding of intent to obstruct justice is required before the obstruction of justice enhancement can be applied. The panel concluded that *Lofton* is controlling in the threat context as in others, and that the district court

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

therefore erred in applying the obstruction of justice enhancement without making any *mens rea* finding.

Judge Bennett dissented. He wrote that the district court was bound to conclude from Ho-Romero's statements and conduct that, more likely than not, Ho-Romero subjectively intended to threaten the witness and obstruct justice; and that the district court's identification of the wrong legal rule was thus harmless.

The panel concurrently filed under seal versions of the opinion and dissent that rely on record evidence that remains under seal.

**COUNSEL**

Mark R. Rehe (argued), Joseph Orabona, and Loren G. Renner, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Chief, Appellate Section; Criminal Division; Andrew R. Harden, Acting United States Attorney; Office of the United States Attorney, United States Department of Justice, San Diego, California; for Plaintiff-Appellee.

Katherine M. Hurrelbrink (argued), Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

## OPINION

BERZON, Circuit Judge:

David Ho-Romero was sentenced to 60 months imprisonment and five years of supervised release after pleading guilty to methamphetamine importation. During the sentencing hearing, the district court applied an obstruction of justice enhancement on the basis of alleged threats Ho-Romero made to a witness who testified in grand jury proceedings regarding his drug charges. The enhancement requires that a "defendant *willfully* obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. (emphasis added). The district judge held that this requirement could be satisfied in some circumstances without any intent to obstruct justice and found only that Ho-Romero's threats could have been understood by the witness as attempts to obstruct justice. The district court made no finding as to whether Ho-Romero *willfully* obstructed or attempted to obstruct justice.

*United States v. Lofton*, 905 F.2d 1315 (9th Cir. 1990), held that a finding of intent to obstruct justice is required before the obstruction of justice enhancement can be applied. We conclude that *Lofton* is controlling in the threat context as in others, and that the district court therefore erred in applying the obstruction of justice enhancement without making any *mens rea* finding.

# I. Background[1]

## A. Alleged Obstruction of Justice

On February 20, 2021, border officials stopped David Ho-Romero as he attempted to enter the United States near San Diego, California. Officials found in the trunk of his car two packages containing a total of 11.6 kilograms of methamphetamine. Ho-Romero was arrested and, after release on bond, indicted on one count of importing methamphetamine under 21 U.S.C. §§ 952 and 960.

Five months after Ho-Romero's arrest, as investigations into his drug importation activity continued, the prosecution called Witness 1 to testify in grand jury proceedings against him. Witness 1 and Ho-Romero were previously in a romantic relationship. Their relationship was turbulent: Witness 1 endured physical abuse from Ho-Romero, and Ho-Romero obtained a restraining order against Witness 1 for her violent conduct against him. Witness 1 and Ho-Romero maintained contact after their relationship ended.

Juan Cardona, Ho-Romero's roommate, was also subpoenaed to testify in Ho-Romero's grand jury proceedings. Ho-Romero learned of Witness 1's testimony from Cardona, as prosecutors asked Cardona about facts Witness 1 likely would have known. Cardona accordingly

---

[1] We unseal information contained in the parties' briefs and the presentence report only to the extent that unsealing is necessary for purposes of the public versions of this opinion and of the dissent. We unseal the sentencing hearing transcript in its entirety, as it was not sealed when filed in the district court. The sealed materials otherwise remain sealed. We are filing under seal, concurrently with this opinion and dissent, versions of the opinion and dissent that rely on record evidence remaining under seal.

alerted Ho-Romero that Witness 1 probably also appeared before the grand jury.

Hearing that, Ho-Romero sent text messages to Witness 2, Witness 1's close friend, writing that he urgently needed to speak with Witness 1. Witness 2 was with Witness 1 when Ho-Romero sent the message, and Witness 1 agreed to speak with Ho-Romero. Both Witness 1 and Witness 2 participated in the conversation.

In his phone call, Ho-Romero made two statements central to this appeal.[2] First, he said that, if Witness 1 did not tell him about her grand jury testimony, he was "going to go over there." Second, he said: "If [I] have a problem, [you] have a problem." Ho-Romero then made a short second call, speaking calmly. Neither Witness 1 nor Witness 2 had any further communications with Ho-Romero regarding his case.

Based on the phone call, the government charged Ho-Romero with two counts of witness tampering.[3] The prosecution called Witness 2 to testify in Ho-Romero's grand jury proceedings on the witness tampering counts. The grand jury indicted Ho-Romero for witness tampering.

Ho-Romero pleaded guilty without a plea agreement to drug importation. But he maintained that he was innocent of the two counts of witness tampering and did not plead guilty to those charges. The parties eventually reached an agreement that, in exchange for dismissal of the witness tampering counts included in the superseding indictment, Ho-Romero would stipulate that the grand jury testimony of both Witness 1 and Witness 2 was uncontroverted and

---

[2] The conversation took place in Spanish.

[3] The first charge cited a violation of 18 U.S.C. § 1512(b)(1) and (b)(2)(A); the second cited a violation of 18 U.S.C. § 1512(b)(3).

"admissible as substantive evidence at any hearing" in the case. After dropping the witness tampering counts, the government relied on the evidence underlying the indictment on those counts to seek an obstruction of justice enhancement under § 3C1.1 of the United States Sentencing Guidelines.

## B. Sentencing

The district court ordered a presentence report ("PSR"). In the PSR, the probation officer recommended that Ho-Romero receive an obstruction of justice enhancement.[4] Defense counsel filed a formal objection to the PSR, arguing as to the obstruction of justice enhancement that Ho-Romero did not willfully obstruct or attempt to impede the administration of justice.

At the sentencing hearing, the court announced its tentative inclination to overrule objections to the PSR and to apply the obstruction of justice enhancement. The court asked the prosecutor (Ms. Rene) what standard the obstruction of justice enhancement requires:

> THE COURT: The willfulness [standard] on the obstruction, that is an objective standard. Am I correct?
>
> MS. RENE: I believe that is correct, Your Honor.

---

[4] Although the PSR calculated an advisory Guidelines Range of 210 to 262 months, the probation officer recommended a sentence of 36 months with five years of supervised release in view of the factors in 18 U.S.C. § 3553(a). The probation officer also recommended that Ho-Romero receive three years of supervised release, instead of five, should he later qualify for "safety valve" relief under 18 U.S.C. § 3553(f).

> THE COURT: And the finding in order to adjust and make that obstruction finding and adjust upward is by a preponderance.
>
> MS. RENE: That is correct, Your Honor.

The court then ruled as follows:

> Here, this is a pretty straightforward call, in my view. This is an objective test, an objective standard because the government has to prove it by a preponderance, and willfulness, the using [of] words or conduct to intimidate or dissuade others from participating in the process with respect to these charges, this case. And just looking at the words and the context in which you made them and the timing of what was going on, it clearly seems to me that the government has met its burden based on the objective evidence. That these statements, because words matter in the context when you say, essentially, if you have a problem they have a problem, and that you are going to go over there and find them. Objectively when you say that to somebody in the context of this case under these circumstances at the time they are going to view it, as they testified and stated they viewed it, and that is as a threat. And so I do find that the plus two obstruction is met.

The district court concluded that, with the addition of the obstruction of justice enhancement, the Guidelines sentence

range was 135 to 168 months. The parties each recommended a sentence well below that range: the government recommended 96 months, and the defense recommended 30 months. Looking to the factors described in 18 U.S.C. § 3553(a), and based on the "very significant mitigating factors" in the case, the court decided to depart downward from the Guidelines range. The court sentenced Ho-Romero to 60 months imprisonment with five years of supervised release. Ho-Romero timely appealed the court's sentence.

## II.  Standard of Review

Ho-Romero argues that the district court misinterpreted the Sentencing Guidelines and so erroneously applied the obstruction of justice enhancement to his sentence. "We review the district court's identification of the correct legal standard de novo, its factual findings for clear error, and its application of the legal standard to the facts for abuse of discretion." *United States v. Rodriguez*, 44 F.4th 1229, 1234 (9th Cir. 2022).

## III.  Discussion

### A.  Mootness

Ho-Romero has finished serving his 60-month sentence and is now subject to a five-year period of supervised release. *United States v. Allen* held that if a defendant has completed an imprisonment sentence but "has received a sentence that includes a period of supervised release, a challenge to the length of his sentence of imprisonment is not moot," as long as, should the defendant succeed on appeal in challenging the imprisonment sentence, the district court "can change the supervised release period." 434 F.3d 1166, 1170 (9th Cir. 2006).

Here, Ho-Romero was convicted under 21 U.S.C. §§ 952 and 960. Section 960(b)(1) specifies a five-year term of supervised release for importation of methamphetamine in a quantity greater than 50 grams. "A district court must sentence a defendant to supervised release if the statute so requires." *Id.* Ho-Romero was discovered at the border with 11.60 kilograms of methamphetamine and so ordinarily would be subject to the five-year minimum term of supervised release. But in Ho-Romero's PSR, the probation officer recommended a three-year term of supervised release, as is permissible, should Ho-Romero "qualif[y] for safety valve at a later time." *See* 18 U.S.C. § 3553(f). At the sentencing hearing, the district court acknowledged that, because Ho-Romero qualified for the safety valve provision, there was no longer a mandatory five-year supervised released term, but the court sentenced him to a five-year supervised release term anyway. On a remand for resentencing, the district court could change that decision and reduce Ho-Romero's period of supervised release. *See, e.g.*, *United States v. Verdin*, 243 F.3d 1174, 1179 (9th Cir. 2001). Ho-Romero's appeal is therefore not moot.

## B. Obstruction of Justice Enhancement

For an obstruction of justice enhancement to apply, § 3C1.1 of the Sentencing Guidelines requires that a "defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. The enhancement can apply where a defendant "threaten[s], intimidat[es], or otherwise unlawfully influenc[es] a co-defendant, witness, or juror, directly or indirectly, or attempt[s] to do so." *Id.* cmt. n.4(A). The government argues that, as this case involved alleged threats, we should depart from this court's

prior interpretations of the "willfully" element in § 3C1.1 as including a *mens rea* requirement and instead affirm the district court's "objective" application of the Guideline to Ho-Romero's sentence. We decline to do so.

1.

This court long ago established that the term "willfully" in § 3C1.1 "contains a clear *mens rea* requirement," which limits the Guideline's scope to defendants who "consciously act with the *purpose* of obstructing justice." *Lofton*, 905 F.2d at 1316–17 (emphasis in original) (quoting *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir. 1990)). Relying on *Lofton* and the text of the Sentencing Guidelines, we have repeatedly affirmed that the "willfully" element in § 3C1.1 connotes a *mens rea* requirement. For example, *United States v. Taylor* quoted *Lofton* in a § 3C1.1 false testimony case and held that a district court must make "sufficient findings that the defendant acted willfully." 749 F.3d 842, 848 (9th Cir. 2014); *see also United States v. Gardner*, 988 F.2d 82, 83–84 (9th Cir. 1993) (citing *Lofton* in § 3C1.1 case involving the defendant's assault on a prison guard); *United States v. White*, 974 F.2d 1135, 1140 (9th Cir. 1992) (describing the defendant's violent conduct, in a case affirming a § 3C1.1 adjustment, as "calculated" to influence a witness's cooperation with law enforcement officials).

We have also specifically addressed the application of § 3C1.1 to alleged threats. *See United States v. Jackson*, 974 F.2d 104 (9th Cir. 1992). *Jackson* first inquired as to whether the defendant's conduct in that case could be reasonably construed as a threat and concluded that the defendant's statements were "sufficiently threatening to qualify as obstruction." *Id.* at 106. "Where a defendant's statements can be reasonably construed as a threat, even if

they are not made directly to the threatened person," *Jackson* stated, "the defendant has obstructed justice." *Id.* (citing *United States v. Shoulberg*, 895 F.2d 882, 885–86 (2d Cir. 1990)). *Jackson* then addressed whether the defendant *intended* to obstruct justice by threatening the witness in the case. As to that issue, the district court in *Jackson* had found that the defendant "acted with the conscious intent to obstruct justice" to deter the witness from testifying, a finding *Jackson* held was not clearly erroneous. *Id.* *Jackson*'s reliance on the district court's "conscious intent" finding confirms that the *mens rea* requirement described in *Lofton* applies in the threat context. *See also United States v. Pascucci*, 943 F.2d 1032, 1037–38 (9th Cir. 1991) (citing *Lofton* in a § 3C1.1 threats to witness case).

The Ninth Circuit's cases applying the § 3C1.1 enhancement for perjury also confirm the provision's *mens rea* requirement. To apply a § 3C1.1 enhancement for perjury, we require a district court to find that "(1) the defendant gave false testimony, (2) on a material matter, (3) with willful intent." *United States v. Castro-Ponce*, 770 F.3d 819, 822 (9th Cir. 2014) (quoting *United States v. Garro*, 517 F.3d 1163, 1171 (9th Cir. 2008)). In perjury cases, the express requirement for a finding of "willful intent" means an intent to obstruct justice by lying under oath.

The "willful intent" requirement in perjury cases recognizes that a defendant who intentionally lies while testifying may do so without willfully intending to obstruct justice. For example, a defendant may misrepresent the amount of money he received in a robbery. His motivation to lie may be to "minimize his embarrassment" about his crime, *see, e.g.*, *United States v. Parker*, 25 F.3d 442, 448 (7th Cir. 1994), or to protect a relative from humiliation, not

to avoid conviction. A defendant may therefore intentionally give inaccurate testimony for reasons unrelated to the administration of justice. We have held that a § 3C1.1 enhancement must be vacated where a district court fails to find that the inaccurate testimony was willfully made to obstruct justice. *See, e.g.*, *United States v. Herrera-Rivera*, 832 F.3d 1166, 1175 (9th Cir. 2016).

Imported into the threat context, the reasoning in the perjury cases suggests there are instances in which, though a speaker was perceived as threatening, the speaker did not purposely or knowingly intend to be understood as making a threat for the purpose of obstructing justice. In such instances, the obstruction of justice enhancement is not applicable. We may not "giv[e] the same word, *in the same statutory provision*, different meanings in *different factual contexts.*" *United States v. Santos*, 553 U.S. 507, 522 (2008) (emphasis in original). To require a showing of willful intent for some conduct—for example, perjury under *Castro-Ponce*—but to permit the application of § 3C1.1 to alleged threats absent a finding of any *mens rea* would contravene *Santos*'s command.

Lastly, the First Amendment "true threats" cases confirm that a *mens rea* finding is necessary under § 3C1.1. Speech is a true threat when "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). "The speaker need not actually intend to carry out the threat," but intimidation is "a type of true threat, where a speaker directs a threat . . . with the intent of placing the victim in fear of bodily harm or death." *Id.* at 359–60.

*Counterman v. Colorado* recently addressed more specifically the *mens rea* on the speaker's part constitutionally required in true threats cases. 600 U.S. 66, 73 (2023). *Counterman* determined that uttering words reasonably perceived by others as a threat is constitutionally insufficient for conviction. *Id.* at 78.

*Counterman* then held that a *mens rea* of recklessness is constitutionally sufficient to show that a defendant intended to make a threat. *Id.* at 79. But § 3C1.1 requires that an action—including a threat—was made willfully for the purposes of obstructing or impeding justice. As § 3C1.1 is specific as to the *mens rea* required, the slightly less rigorous constitutional *mens rea* required by the statute approved in *Counterman* is inapplicable. At the same time, *Counterman* demonstrates that the purely objective standard the district court adopted at Ho-Romero's sentencing hearing could raise constitutional issues.[5]

In sum, *Lofton* controls here. The "willfully" element in § 3C1.1 requires a finding in threats cases that the defendant made a threat with specific intent to convey that the witness could be harmed if the witness participates in legal proceedings adversely to the defendant.

## 2.

The *mens rea* approach in *Lofton* contrasts with the government's position in this case. The government cites no Ninth Circuit case disavowing or disagreeing with *Lofton*. Instead, the government argues that this court should adopt

---

[5] We do not decide whether *Counterman* applies in the Guidelines context.

the Second Circuit's "inherently obstructive" line of authority.

In the Second Circuit, if certain conduct is "inherently obstructive of the administration of justice," a court may find "that the defendant willfully engaged in the underlying conduct, regardless of his specific purpose." *United States v. Reed*, 49 F.3d 895, 900 (2d Cir. 1995); *see also United States v. Cassiliano*, 137 F.3d 742, 747 (2d Cir. 1998). Threats to witnesses are an "extreme" obstacle to the administration of justice, the government argues here, so, applying the *Reed* approach, *Lofton* should be inapplicable in threats cases. No finding of intent to obstruct justice is necessary, the government maintains, where the language used would reasonably be viewed by a potential witness as intended to discourage their participation in legal proceedings.

Even if we were free to do so—which we are not—we would reject, for several reasons, the government's invitation to alter or adjust our interpretation of § 3C1.1 in reliance on Second Circuit case law.[6]

First, what *Reed* actually held is unclear. *Reed* concluded that remand was required *in that case* because the district court failed to make "findings that the conduct it believed was obstructive was willfully so." 49 F.3d at 901.

The defendant in *Reed* pleaded guilty to mail-fraud and narcotics-distribution conspiracy charges. *Id.* at 897.

---

[6] We are bound by the precedential aspects of our prior decision in *Lofton* under the "law of the circuit" rule, *United States v. Washington*, 593 F.3d 790, 798 n.9 (9th Cir. 2010), and we must follow published decisions of this court "unless and until overruled by a body competent to do so," *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (quoting *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001)).

Pursuant to a plea bargain, Reed agreed to testify against his co-conspirators, provided that the government agreed to support a motion for his release on bail. *Id.* In the bail order, the district court ordered that Reed "appear at all proceedings as required," but Reed failed to appear at his sentencing hearing and "dove out of a window" when officers attempted to arrest him. *Id.*

*Reed* stated that "intentionally failing to appear as required at judicial proceedings" is "inherently obstructive of the administration of justice." *Id.* at 900. But then, in accord with the text of the § 3C1.1 Guideline, *Reed* held that there were insufficient findings by the district court to infer whether Reed's conduct was a "*willful*" obstruction of justice. For example, there were no findings as to whether Reed knew his sentencing had been rescheduled for the date he failed to appear, nor as to whether Reed knew that the men who attempted to arrest him were law enforcement officers. *Id.* at 901–02. So, notwithstanding the delay of the original sentencing hearing caused by Reed's absence, *Reed* concluded that remand was required because the record was "unclear as to what basis the sentencing court adopted in enhancing Reed's offense level for obstruction of justice." *Id.* at 902. The "inherently obstructive" test established by *Reed* thus appears limited to the necessary impact of certain behavior—there, not appearing in court and thereby delaying proceedings. But it did not eliminate a district court's obligation to base its application of a § 3C1.1 enhancement on findings of intent to cause that impact.

Second, the Second Circuit itself has required a showing of intent to obstruct justice in threats cases decided after *Reed*. For example, *United States v. Hernandez* held in a threats case that, "[f]or an obstruction of justice to be found, a court must establish that the defendant had the specific

intent to obstruct justice." 83 F.3d 582, 585 (2d Cir. 1996). So whatever the "inherently obstructive" language in *Reed* means, it does not include threats.

Finally, the "inherently obstructive" test, even if more broadly understood, would provide little utility to prosecutors or district courts. If certain conduct is indeed inherently indicative of a purpose to obstruct the administration of justice, then the government should have little trouble proving that it was willfully done to obstruct justice, by relying on a strong inference derived from the objective circumstances.

We conclude that there is no basis for limiting *Lofton*. It remains the law of this circuit, in threat cases as in others, that the obstruction of justice enhancement applies only if the defendant "consciously act[s] with the *purpose* of obstructing justice." *Lofton*, 905 F.2d at 1317 (emphasis in original) (quoting *Stroud*, 893 F.2d at 507).

## C.  Remand

Where the district court applies the wrong legal standard and so makes no findings on a necessary element of a Guidelines provision, it is the district court, not this court, that must make those findings. *See, e.g.*, *United States v. Jimenez-Ortega*, 472 F.3d 1102, 1103–04 (9th Cir. 2007) (per curiam); *United States v. Ochoa-Gaytan*, 265 F.3d 837, 844 (9th Cir. 2001). The government proposes otherwise, arguing that remand is unnecessary in Ho-Romero's case because "the record is already complete on the issue of obstruction."

We cannot agree. Whether the record is complete is beside the point.[7] *Jimenez-Ortega* and *Ochoa-Gaytan*—and many other cases—stand for the general principle that remand is appropriate in sentencing appeals where further factfinding is necessary to determine the proper Guidelines calculation. *See Jimenez-Ortega*, 472 F.3d at 1104 (holding that a district judge must make a finding of materiality before enhancing a defendant's sentence for obstruction of justice based on perjury under § 3C1.1).[8] The government offers no authority to the contrary. The district court made no findings with respect to Ho-Romero's intent under § 3C1.1 as required by *Lofton*, so remand is required.[9]

---

[7] That Ho-Romero stipulated that grand jury testimony provided by Witness 1 and Witness 2 would be "uncontroverted" for purposes of "any hearing" in the case is also beside the point. "Uncontradicted testimony is not necessarily undisputed evidence." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 649 (9th Cir. 2006). "[T]he court is not bound to accept uncontroverted testimony at face value if it is improbable, unreasonable or otherwise questionable." *Wilbur-Ellis Co. v. The M/V Captayannis "S"*, 451 F.2d 973, 974 (9th Cir. 1971) (per curiam).

[8] *See also, e.g.*, *United States v. Grimaldo*, 993 F.3d 1077, 1082–83 (9th Cir. 2021) (concluding remand was required where the district court applied a four-level § 2K2.1(b)(6)(B) enhancement but did not make findings sufficient to connect the defendant's possession of a firearm with his likelihood of owning illegal narcotics); *United States v. Gutierrez-Hernandez*, 94 F.3d 582, 585–86 (9th Cir. 1996) (instructing the district court on remand to "make express factual findings" as required by the Guidelines); *United States v. Navarro*, 979 F.2d 786, 790 (9th Cir. 1992) (same).

[9] Ho-Romero contends that remand is also required under Federal Rule of Criminal Procedure 32(i)(3)(B). As remand is necessary because the district court did not make a finding on the "willfully" element, we do not reach the Rule 32 issue.

### D.  Harmless Error

Toward the same end—avoiding remand—the government maintains that any error in Ho-Romero's sentencing was harmless. The government makes two arguments as to harmless error: First, that, given overwhelming record evidence, the district court would have found the requisite *mens rea* under § 3C1.1 had it applied the subjective intent element; and second, that any error in a Guidelines calculation is harmless where the district court issues a below-Guidelines sentence and specifies that the 18 U.S.C. § 3553(a) factors, not the Guidelines, controlled the sentence. We take each argument in turn.

1.

The government avers that the district court's legal error in interpreting the Guidelines enhancement is harmless because there is "overwhelming evidence" of Ho-Romero's intent to obstruct justice. The "overwhelming evidence" standard proposed by the government emanates from cases holding that a district court's omission of a necessary element in jury instructions, although a violation of the Sixth Amendment's jury trial guarantee, can be harmless. *See Neder v. United States*, 527 U.S. 1, 15–20 (1999); *United States v. Hansen*, 97 F.4th 677, 681 (9th Cir. 2024). This court has not established the standard for harmless error review of a district court's Guidelines calculation under the circumstances present here–that is, where the district court did not make findings on an essential Guidelines element. Such an error involves no violation of the right to a jury trial.[10]

---

[10] As we explain later, *infra* at 26, the distinct question whether the district court would have imposed the same sentence had it calculated

*Neder* is nevertheless instructive. To establish the standard for harmless error review for omitted elements in jury instructions, *Neder* turned to *Chapman v. California*, 386 U.S. 18 (1967). As *Neder* explained, *Chapman* held that constitutional errors during criminal trials are harmless when "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder*, 527 U.S. at 15 (quoting *Chapman*, 386 U.S. at 24). "Beyond a reasonable doubt" is, of course, the standard for conviction in criminal cases, and so "a familiar standard to all courts." *Chapman*, 386 U.S. at 24. *Neder* then concluded that the harmless error inquiry for omitted elements in jury instructions must be substantially similar to other instances of constitutional error, and that a court must therefore ask whether "it [is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error[.]" 527 U.S. at 18. *Neder* adopted the "overwhelming evidence" of the omitted element requirement as an application of the *Chapman* reasonable doubt standard for the element-omission context. *Id.* at 16–17.

We take an approach to deriving a harmless error standard similar to *Neder*'s and so root our harmless error standard in the role of district courts with regards to Guidelines decisions. As the application of a Guidelines standard to a set of facts, the district court's finding as to whether Ho-Romero acted with the conscious purpose of obstructing justice needed only to be supported by a preponderance of the evidence. *See United States v. Armstrong*, 620 F.3d 1172, 1176 (9th Cir. 2010). We review

---

the Guidelines range properly is ordinarily not subject to harmless error review.

a district court's application of the Sentencing Guidelines to the facts of a case for abuse of discretion. *See United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc). So, to conduct the harmless error analysis here, we proceed by assessing whether the district court would have abused its discretion if it concluded by a preponderance of the evidence that Ho-Romero did not "consciously act with the *purpose* of obstructing justice." *Lofton*, 905 F.2d at 1317 (emphasis in original) (quoting *Stroud*, 893 F.2d at 507). If so, the error here is harmless; otherwise, it is not. By preserving the primary district court role in sentencing, this approach is appropriately stringent and helps ensure that the Guidelines process functions properly.

We note that in *United States v. Evans*, 883 F.3d 1154 (9th Cir. 2018), we held that a district court's legal error in applying a Guidelines enhancement was harmless. There, the district court found that the defendant used a firearm in the commission of an aggravated assault, and so applied § 2A2.2(a) and (b)(2)(A) of the Guidelines to enhance the defendant's sentence. *Evans*, 883 F.3d at 1158–59. The defendant argued that the district court's finding was erroneous because he used the firearm in self-defense. *Id.* at 1159. *Evans* concluded that the district court's failure to place the burden of proof on the government to disprove self-defense was error but was harmless, because surveillance footage "clearly showed" that the defendant "opened fire on a fleeing man." *Id.*

*Evans* involved a procedural error, not the failure to make a necessary finding of fact. And, given the availability of conclusive video evidence, *Evans* had no reason to announce any applicable standard for determining when a Guidelines application error is harmless. In any event, applying the standard we adopt here, it would clearly have

been an abuse of discretion in *Evans*, given the video evidence, for the district court to have found that the government did not meet its burden of disproving self-defense.

2.

On the record at the sentencing proceeding, the district court would not have abused its discretion by determining that Ho-Romero did not act with the conscious purpose of obstructing justice. So the error here is not harmless.[11] Here is why:

A defendant's objectively threatening conduct can be motivated by various purposes. For example, *United States v. Hernandez* involved six incidents of intimidation by a defendant against witnesses. 83 F.3d at 584. The defendant called a witness "the devil," attempted to contact that witness on the first day of trial, and yelled at another witness to "die, die, die" prior to the sentencing hearing. *Id. Hernandez* held that the § 3C1.1 enhancement could not be applied in that case absent some additional evidence of the defendant's purpose, because "[f]ury may be exceedingly unpleasant, but alone, it bespeaks no intent to obstruct justice." *Id.* at 586. Even if the defendant wished the witness dead, *Hernandez* reasoned, there was no evidence that she made "statement[s] in order to get [the witness] to change his testimony at the sentencing hearing," so the obstruction of justice enhancement was inapplicable. *Id.*

---

[11] We note that there are circumstances in which harmless error review would be inappropriate. For example, if the defendant was precluded from presenting evidence regarding a necessary element, the district court's Guidelines holding would likely be an abuse of discretion without regard to any harmless error analysis based on the record that was made.

Similarly, given both "the face" and "context" of Ho-Romero's statements, a district court could find, without abusing its discretion, that the government had not proven Ho-Romero's conscious purpose to prevent Witness 1 or Witness 2 from participating in proceedings related to his case. *United States v. Archer*, 671 F.3d 149, 167 n.11 (2d Cir. 2011).[12] In his phone call to Witness 1 and Witness 2, Ho-Romero made two statements that served as the basis for the § 3C1.1 enhancement:

- Ho-Romero said that, if Witness 1 did not tell him about her grand jury testimony, he was "going to go over there."

- "If [I] have a problem, [you] have a problem."

In his first statement, Ho-Romero warned that he would seek out Witness 1 if she declined to share her grand jury testimony with him. The government argues the record "leaves no doubt" Ho-Romero already knew what Witness 1 said in her testimony, and so he must have instead intended his statement to intimidate Witness 1, thereby obstructing proceedings in his case; the dissent adopts this view of the record. *See* Dissent at 33. That interpretation of Ho-Romero's statement rests on the proposition that Ho-Romero

---

[12] *Archer*, another case assessing alleged threats in the § 3C1.1 context, notes that *Hernandez* followed the now-repealed Guidelines note to take a defendant's statements "in a light most favorable" to him. *Archer*, 671 F.3d at 167 n.11 (citing U.S.S.G. § 3C1.1 cmt. n.1 (1995), *repealed by* U.S.S.G. App'x C, amd. 566 (1997)). Yet *Archer* reaffirmed *Hernandez*'s holding because "its conclusion was largely based on the total lack of evidence showing any intent [by the defendant] to obstruct justice," any changes to the Guidelines notwithstanding. *Id.*

said one thing but subjectively meant to convey something different: Although he said he would go to where Witness 1 was if she did not tell him what she'd said, he meant her to understand that, even if she now did give him a full account of her grand jury testimony, he would come over to hurt her unless she promised not to cooperate further with the police.

Further, Ho-Romero's knowledge that Witness 1 testified is distinct from knowledge of the content of Witness 1's testimony. All Ho-Romero knew about the content of Witness 1's testimony was partial and based on inferences from what Cardona was asked. True, Ho-Romero was apparently desperate to know what the government knew about his activities and motivated by "fury." *Hernandez*, 83 F.3d at 586. But that could be because he wanted to formulate his strategy with his lawyer with complete knowledge of what information the government had gathered. The district court would not have abused its discretion in finding the government had not shown by a preponderance of the evidence that Ho-Romero made his first statement with the conscious purpose of preventing Witness 1's participation in judicial proceedings.[13]

---

[13] The dissent emphasizes Ho-Romero's earlier violent treatment of Witness 1 as context supporting the inference that Ho-Romero meant to threaten physical violence when he said he would come to Witness 1's location. *See* Dissent at 30–32. The question pertinent to the § 3C1.1 inquiry is whether Ho-Romero acted with the conscious purpose of obstructing justice. So although the grand jury testimony describing Ho-Romero's relationship with Witness 1 demonstrates that he is capable of coercion, that evidence does not necessarily support the separate inference required to apply the obstruction of justice enhancement: that Ho-Romero made his statements with the express purpose of preventing Witness 1 from participating in judicial proceedings.

Nor is the intent behind Ho-Romero's second statement self-evident. He said Witness 1 or Witness 2 would "have a problem" if he "[had] a problem." Ho-Romero contends the statement could be found not to have an obstruction of justice purpose: Ho-Romero could have meant that Witness 1's testimony would either implicate them in his trafficking activities or reveal that Witness 1 was violating the terms of the restraining order against her by speaking with Ho-Romero. The government maintains instead that Ho-Romero must have intended to threaten Witness 1 and Witness 2 by insinuating they would face consequences generated by Ho-Romero for cooperating with law enforcement.

The record does not necessarily support either parties' interpretation. Witness 2 never explained why or how he felt threatened or what he expected Ho-Romero to do after the phone call. Witness 2 did state, however, that Ho-Romero was completely calm when he made a second, brief phone call.

Sentencing is the prerogative of the district court, *Williams v. United States*, 503 U.S. 193, 205 (1992), which "may draw all reasonable inferences from the words used and from the pertinent circumstances" to determine whether the defendant made a threat, *Shoulberg*, 895 F.2d at 885. In making findings on remand, the district court could determine without abusing its discretion that there is sufficient evidence of Ho-Romero's conscious purpose to obstruct justice, and so reimpose the § 3C1.1 enhancement. "But in imposing enhancements under the Guidelines, we cannot be swayed by speculation or convinced by conjecture." *Grimaldo*, 993 F.3d at 1082. On the record before us, the district court would not have abused its discretion by finding that Ho-Romero lacked specific intent to obstruct justice under § 3C1.1. The district court's error

in applying the obstruction of justice enhancement was therefore not harmless.

3.

That Ho-Romero was sentenced below the proper Guidelines calculation were the obstruction of justice enhancement excluded also does not obviate the need for remand. A district court must calculate the correct Guidelines range and "use that recommendation as the 'starting point and the initial benchmark'" in sentencing. *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) (per curiam) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)). "The Sentencing Guidelines are advisory, but any calculation error is a significant procedural error that requires us to remand for resentencing." *United States v. Brown*, 879 F.3d 1043, 1050 (9th Cir. 2018) (citation and quotation marks omitted).

Here, the district court applied the obstruction of justice enhancement without making necessary *mens rea* findings and so did not calculate the Guidelines sentence range correctly. The court would have calculated a different Guidelines range if it did not apply the two-level obstruction of justice enhancement. Using a different Guidelines range, the court may have arrived at a different sentence—for example, one below the new, lower Guidelines range to the same degree the previous sentence was below the higher Guidelines range originally calculated.

There is a narrow exception to the remand requirement where the district court unequivocally states during the sentencing hearing what the sentence would have been were the Guidelines calculation otherwise. The district court must "acknowledge[] that the correct Guidelines range is in dispute and perform[] its sentencing analysis twice,

beginning with both the correct and incorrect range." *United States v. Dominguez-Caicedo*, 40 F.4th 938, 963 (9th Cir. 2022) (citation modified) (quoting *Munoz-Camarena*, 631 F.3d at 1030 n.5). But "a one-size-fits-all explanation" for a sentence premised on an incorrect Guidelines range "ordinarily does not suffice" to avoid remand. *Munoz-Camarena*, 631 F.3d at 1031.

Here, the prosecution tried but failed to elicit a specific attestation from the district court as to how an alternative Guidelines calculation would affect Ho-Romero's sentence. When asked by the prosecution whether the court would have given Ho-Romero the same 60-month sentence without the obstruction enhancement, the district court said, "I am not quite sure how to answer the question." The court then stressed that the Guidelines range "inform[ed] the [§] 3553 analysis" and is "the benchmark" and "important." The district court also said that the § 3553 analysis was "most meaningful," but never stated "that he would impose the same sentence regardless of the Guidelines calculation because of the mitigation factors." *United States v. Leal-Vega*, 680 F.3d 1160, 1170 (9th Cir. 2012).

A "conclusory" statement that the district court would impose the same sentence no matter the correct Guidelines calculation "does not demonstrate that the district court conducted the sentencing a second time starting with the correct range and keeping it in mind throughout the process," and so would not suffice to obviate the need for remand. *Dominguez-Caicedo*, 40 F.4th at 964. Here, there was not even such a conclusory statement. There was no statement at all concerning the sentence the district court would impose without the obstruction enhancement, despite the prosecution's invitation to make such a statement. Remand

is therefore necessary in accord with our usual procedure. *See Brown*, 879 F.3d at 1050.

Nor is our analysis altered by the fact that Ho-Romero has completed his incarceration sentence and is now serving a five-year term of supervised release. The Sentencing Guidelines require that a term of supervised release "shall not be less than any statutorily required minimum term." U.S.S.G. § 5D1.2(a). At the sentencing hearing, defense counsel objected to the procedural reasonableness of Ho-Romero's sentence and noted that the Guidelines did not require five years of supervised release because Ho-Romero qualified for "safety valve" under 18 U.S.C. § 3553(f). The district court agreed that the supervised release range "would be three to five" years but nevertheless concluded that "five [was] the right term" for Ho-Romero without providing further reasoning. We have held that harmless error can apply when the district court chooses a "within-Guidelines sentence that falls within both the incorrect and the correct Guidelines range and explains the chosen sentence adequately," or when the district court "performs the sentencing analysis with respect to an incorrect Guidelines range that overlaps substantially with a correct Guidelines range such that the explanation for the sentence imposed is sufficient even as to the correct range." *Munoz-Camarena*, 631 F.3d at 1030 n.5. But the district court did not explain with any detail its decision to sentence Ho-Romero to five years of supervised release, so it is not clear whether he would have sentenced Ho-Romero to the same supervised release term absent the obstruction of justice enhancement.

We conclude that remand for resentencing is required.

## IV.  Conclusion

The district court erred by applying an obstruction of justice enhancement to Ho-Romero's sentence without making any findings as to his conscious purpose to obstruct justice. The district court's sentence is **VACATED and REMANDED** for further proceedings consistent with this opinion.

---

BENNETT, Circuit Judge, dissenting[1]:

The district court was bound to conclude from Ho-Romero's statements and conduct that, more likely than not, he subjectively intended to threaten Witness 1 and obstruct justice.  The error below was thus harmless, and I would affirm.  I therefore respectfully dissent, in part.

"When an 'alleged error is harmless [it is] not a ground for resentencing.'" *United States v. Ali*, 620 F.3d 1062, 1074 (9th Cir. 2010) (alteration in original) (quoting *United States v. Garro*, 517 F.3d 1163, 1169 (9th Cir. 2008)).  In other words, "[i]f the appellate court determines that the sentencing court misapplied the guidelines," it need not remand if "it determines that 'the error was harmless . . . .'" *United States v. Crawford*, 185 F.3d 1024, 1029 (9th Cir. 1999) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)); *see also, e.g.*, *United States v. Van Aalsburg*, 357 F. App'x 783, 783–84 (9th Cir. Nov. 19, 2009) (when district court incorrectly applied preponderance-of-the-evidence standard in finding evidence supported sentence enhancements, the panel affirmed, finding error harmless

---

[1] Concurrently filed with this dissent is a version of the dissent filed under seal, which quotes record evidence that remains under seal.

because evidence satisfied clear-and-convincing standard); *United States v. Merke*, 246 F. App'x 494, 497 (9th Cir. Aug. 29, 2007) (same).

The district court correctly identified that it had to make the obstruction finding by a preponderance of the evidence. I agree with the majority, however, that the district court erroneously applied an objective standard rather than a subjective standard. Nonetheless, had it applied the correct, subjective standard, the district court would still have been bound to apply the enhancement. We review for abuse of discretion a district court's application of the correct legal standard to the facts. *United States v. Rodriguez*, 44 F.4th 1229, 1234 (9th Cir. 2022). Here, the district court would have abused its discretion if it did not conclude by a preponderance of the evidence that there was a subjective intent to obstruct justice. Thus, although the district court erred by applying an objective standard, had it applied the correct legal standard, it would have abused its discretion had it found no intent to obstruct justice. Because "[w]e may affirm the order on any ground supported by the record, even if it differs from the rationale of the district court," *United States v. Perez-Garcia*, 96 F.4th 1166, 1172 (9th Cir. 2024), I would find that the district court was bound to apply the enhancement. We can thus "say with certainty that the district court's sentencing error was harmless." *United States v. Bankston*, 901 F.3d 1100, 1108 (9th Cir. 2018).

When determining whether to apply the obstruction-of-justice enhancement, courts can find evidence of the intent to obstruct "either on the face of the statements or in their context." *See United States v. Archer*, 671 F.3d 149, 167 n.11 (2d Cir. 2011). The context here is important and compelling. Ho-Romero is a dangerous, violent person, and there was "a history of violence and threats amongst not only

[Ho-Romero] and [Witness] 1 but also [Ho-Romero] and [Witness] 2," the other victim of the witness tampering. Sealed but uncontroverted evidence in the record confirms that Ho-Romero had a history of violence toward Witness 1 and Witness 2, a history of traveling to commit that violence, and a history of locating Witness 1 and Witness 2 and of turning up without invitation.

In this context, the district court would have abused its discretion had it not found by a preponderance of the evidence that Ho-Romero's statements constituted a threat to obstruct justice. Yelling and upset, Ho-Romero told Witness 1 and Witness 2 that "if I have problems you're going to have problems," and stated that "he was going to go there and find them."[2] Uncontroverted sealed testimony suggests that Ho-Romero already knew the content of Witness 1's testimony and that he threatened to find and approach her. Given Ho-Romero's history with Witness 1 and Witness 2, these statements clearly demonstrate an intent to intimidate and obstruct justice.

The majority relies on *United States v. Hernandez*, a nearly thirty-year-old Second Circuit case, for the principle that objectively threatening conduct might not be motivated by a subjective intent to threaten. 83 F.3d 582, 584–86 (2d Cir. 1996). But *Hernandez* is clearly distinguishable from

---

[2] These statements, by themselves, *at least* come right to the door of meeting the relevant standard. Ho-Romero knew Witness 1 had testified before the grand jury. He told Witness 1 that if he got in trouble (which, in context, can only mean through the actions of the federal prosecutor), there would be consequences for her. But, of course, this was not all the evidence before the district court. When combined with the undisputed, extraordinary facts related to Ho-Romero's dangerousness and violence—all known to Witness 1—the evidence would satisfy the clear-and-convincing standard were that the standard.

the case before us.  In *Hernandez*, the defendant called a witness "the devil" and yelled "die, die, die" at another witness before sentencing.  *Id.* at 584.  But Hernandez did not, like Ho-Romero, state any intent "to go there and find" the witness or warn that the witness was "going to have problems."[3]  And Hernandez had no history of violence toward the witnesses, as Ho-Romero does.  In fact, the *Hernandez* court's "conclusion was largely based on the *total lack* of evidence showing *any* intent [by the defendant] to obstruct justice."  *Archer*, 671 F.3d at 167 n.11 (emphasis added) (explaining why *Hernandez* was not abrogated by the repeal of a Sentencing Guideline note "requiring the court to take the defendant's statements 'in a light most favorable to' her" (citation omitted)).  Further, the *Hernandez* court found that "[f]ury may be exceedingly unpleasant, but alone, it bespeaks no intent to obstruct justice" in the absence of "statement[s] in order to get [the witness] to change his testimony at the sentencing hearing."  83 F.3d at 586.  Here, by contrast, statements of exactly that kind were made.  Ho-Romero had a history of violence toward Witness 1.  He said he would come and find her.  And he said "if I have problems, you're going to have problems," which is both an outright threat and a statement made "in order to get" Witness 1 "to change h[er] testimony."

---

[3] The Second Circuit did consider a voicemail received by two witnesses in which a male voice stated, "We heard you are rats.  You rat out people. You rat out people and rats gotta die.  We gonna come visit you.  Bye." *Hernandez*, 83 F.3d at 584.  The court described this voicemail as "a threat" and stated that it "could certainly amount to an attempt to obstruct justice."  *Id.* at 586.  But the court did "not reach the issue of whether this tape-recorded message was so intended because nothing connect[ed] the defendant," who was female, "to the threat."  *Id.*

The majority's alternate interpretation of Ho-Romero's statements is unrealistic.  As counsel for the United States stated in its brief, "if a loan shark tries to pressure a victim into paying a debt by saying he will face 'problems' or 'consequences' otherwise, the intent to threaten is manifest." And while the majority insists that "Ho-Romero's knowledge that Witness 1 testified is distinct from knowledge of the content of Witness 1's testimony," in reality, sealed uncontroverted evidence indicates that Ho-Romero already knew the content of her testimony.

Because the district court would have needed to conclude by a preponderance of the evidence that Ho-Romero subjectively intended to threaten Witness 1 and obstruct justice, we should find that the enhancement in U.S.S.G. § 3C1.1 applies and that the district court's identification of the wrong legal rule was harmless.